UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KELVIN A. CARDON, DEVIS O.
LOBO MARTINEZ and
FRANCISCO ROMERO, and other
similarly situated individuals,

    Plaintiffs,

v.                                                Case No.:  2:21-cv-432-SPC-MRM

H. DESIGN GROUP, LLC, E-
DEVELOPMENT GROUP CORP,
JORGE A. HOYOS and PABLO
ARCE,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the Revised Joint Motion for Entry of Order Approving Settlement and Dismissing Case with Prejudice (Doc. 30).  The parties request that the Court approve their revised settlement and dismiss the case with prejudice.  (*Id.* at 1).[1]  After careful review of the parties' submissions and the record, the Undersigned respectfully recommends that the motion (Doc. 30) be **GRANTED**.

## BACKGROUND

Plaintiffs filed a Collective Action Complaint on behalf of themselves and other similarly situated individuals, asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (FLSA) against Defendants for failure to pay overtime

---

[1] A pinpoint page citation to a document refers to CM/ECF pagination.

(Count I), failure to pay minimum wage (Count II), and retaliatory constructive discharge (Count III).  (Doc. 1 at 9-35).[2]

Plaintiffs allege that "Defendants H. Design Group, LLC and E-Development Group Corp are general contractors and developers constructing energy-efficient homes in Port Charlotte, FL." (*Id.* at 4).  They also allege that "[t]he individual Defendants Jorge A. Hoyos and Pablo Arce were and are now the owners/partners/ officers and managers of Defendant Corporations H. Design Group, LLC, and E-Development Group Corp, respectively." (*Id.* at 3).  According to Plaintiffs, Defendants H. Design Group, LLC and E-Development Group Corp were joint employers. (*Id.* at 3-5).  Plaintiffs allege that Defendants hired them "as non-exempted, hourly construction employees from about February 10, 2021, to March 10, 2021, or 4 weeks." (*Id.* at 6).[3]

---

[2]  Although Plaintiffs brought this putative collective action on behalf of themselves and other similarly situated individuals, (*see* Doc. 1 at 3-4), Plaintiffs did not seek collective action certification before settling and there are no opt-in plaintiffs whose rights may be affected by or should be considered in approving the proposed settlement agreement.  Thus, the Court need only consider the proposed settlement of Plaintiffs' individual claims.

[3]  This allegation is repeated in Counts I and II of the Complaint.  (*See* Doc. 1 at 11, 13-15, 21).  At the same time, Plaintiffs inconsistently allege in Count III that "Defendants H. Design Group, Jorge A. Hoyos, and Pablo Arce hired Plaintiffs Devis O. Lobo Martinez, Kelvin A. Cardon, and Francisco Romero as non-exempted hourly construction employees from about August 03, 2020, to September 17, 2020, or 6 weeks." (*Id.* at 35).  In their respective answers to the Court's interrogatories, each Plaintiff states that he was employed by Defendants from February 10, 2021 to March 10, 2021, or four weeks.  (*See* Doc. 19 at 1; Doc. 20 at 1; Doc. 21 at 1).  The interrogatory answers also define the relevant timeframe for the retaliation claim in Count III as "March 11, 2021 to April 5, 2021." (Doc. 19 at 2;

As to their compensation, Plaintiffs allege their "wage rate was set at the rate of $25.00 an hour" and their overtime "should be $37.50[] an hour." (*Id.*). "While employed by Defendants, Plaintiffs worked seven days per week, from Monday to Sunday the same schedule, from 7:00 AM to 5:00 PM. [sic] (10 hours daily), for a total of 70 hours weekly" and they "were not able to take bonafide lunch periods." (*Id.* at 7). Plaintiffs complain that "Defendants required Plaintiffs to work more than 40 hours every week. However, Defendants did not pay Plaintiffs for all their hours worked. Plaintiffs were not paid their regular wages and overtime hours at any rate, not even the minimum wage rate." (*Id.*). Plaintiffs also aver that Defendants did not pay them regular wages for two weeks. (*Id.* at 22, 31). Plaintiffs claim that Defendants' conduct was willful. (*Id.* at 7). They also allege that when they complained about Defendants' practices, Defendants did not correct the problems. (*Id.* at 8). As a result, Plaintiffs aver that "[o]n or about March 10, 2021, Plaintiffs were forced to leave their employment with Defendants due to lack of regular wages and overtime compensation." (*Id.*).

In Count I of the Complaint, each Plaintiff individually alleges he is owed $4,500.00 in unpaid wages, and they each provide calculations to support their claims. (*See id.* at 13-16). The calculations provided do not appear to include liquidated damages. (*See id.*). In Count II of the Complaint, each Plaintiff

---

Doc. 20 at 2; Doc. 21 at 2). The Court need not resolve these inconsistencies to find the proposed settlement fair and reasonable.

individually alleges he is owed $692.00 in unpaid minimum wages, and they each provide calculations to support their claims. (*See id.* at 24-26). Again, the calculations provided do not appear to include liquidated damages. (*See id.*).

Based on these allegations, Plaintiffs seek on behalf of themselves and other similarly situated individuals to recover "regular wages, overtime compensation, liquidated damages, costs, and reasonable attorney's fees" under the FLSA. (*Id.* at 3).

Each Plaintiff filed answers to the Court's interrogatories. (Docs. 19-21). In his interrogatory answers, Plaintiff Romero claims damages of $8,192.00, including $4,500.00 in overtime, $692.00 in minimum wages, and $18,000.00 in lost wages. (Doc. 19 at 3). Obviously, these itemized damages do not add up to the total $8,192.00 Plaintiff Romero claims. The Undersigned construes the reference to $18,000.00 in lost wages to be a scrivener's error and that Plaintiff Romero's actual lost wages claim is $3,000.00, consistent with the lost wages claimed by the co-Plaintiffs (*see* Doc. 20 at 3; Doc. 21 at 3) whose duration and terms of employment are alleged to be the same as Plaintiff Romero (*see* Doc. 1). In any case, none of these calculations appear to include liquidated damages. (Doc. 19 at 3).

In his interrogatory answers, Plaintiff Lobo Martinez claims damages of $8,192.00, including $4,500.00 in overtime, $692.00 in minimum wages, and $3,000.00 in lost wages. (Doc. 20 at 3). These calculations do not appear to include liquidated damages. (*See id.*).

4

In his interrogatory answers, Plaintiff Cardon similarly claims damages of $8,192.00, including $4,500.00 in overtime, $692.00 in minimum wages, and $3,000.00 in lost wages. (Doc. 21 at 3). These calculations do not appear to include liquidated damages. (*See id.*).

Defendants filed an answer, expressly denying Plaintiff's allegations and asserting several affirmative defenses. (*See* Doc. 15).

On October 6, 2021, the parties filed their first Joint Motion for Entry of Order Approving Settlement and Dismissing Case with Prejudice. (*See* Doc. 28). On January 1, 2022, the Undersigned denied the first motion without prejudice, finding three deficiencies: (1) the scope of Plaintiffs' dismissal obligation in the settlement agreement was vague and implied through the use of "including but not limited to" language that Plaintiffs had potentially agreed to dismiss some other undisclosed action in addition to this action; (2) the settlement agreement contained an expansive confidentiality provision that the parties failed to address; and (3) the settlement agreement contained a prevailing party provision that appeared to expose Plaintiffs to fees and costs if they pursued unreleased non-FLSA arbitration or litigation against Defendants. (*See* Doc. 29 at 2-5). The Undersigned required the parties to address these issues in any renewed motion. (*See id.*).

On January 20, 2022, the parties filed the current revised motion (Doc. 30) and attached to it a Revised Settlement Agreement and FLSA Release (Doc. 30-1). The current motion and the revised settlement agreement appear to address or resolve the Undersigned's concerns. Specifically, the parties explain in the revised

5

motion that they "have removed the 'including but not limited to' language, the 'confidentiality provision', [sic] and the 'prevailing party provision' from the agreement." (Doc. 30 at 5-6).

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores, Inc.*, 679 F.2d 1350 at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id*. at 1353-54. The Eleventh Circuit has found settlements to be permissible when employees sue under the FLSA for back wages. *Id*. at 1354. The Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's

> overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id*.

## ANALYSIS

The Undersigned analyzes below the bona fide nature of the parties' dispute, the monetary terms of the proposed settlement, the non-cash concession included in the settlement, and the payment of attorney's fees and costs contemplated by the settlement. Because the parties removed the problematic provisions that prompted the Undersigned to deny the initial motion without prejudice (*see* Doc. 29 at 2-5; *see also* Doc. 30 at 5-6), the Undersigned does not address them further.

### I.     Bona Fide Dispute

To begin, the Undersigned finds that a bona fide dispute exists between the parties.

At base, Plaintiffs claim that "[w]hile employed by Defendants, Plaintiffs worked seven days per week, from Monday to Sunday the same schedule, from 7:00 AM to 5:00 PM. [sic] (10 hours daily), for a total of 70 hours weekly" and they "were not able to take bonafide lunch periods." (Doc. 1 at 7). They allege that "Defendants required [them] to work more than 40 hours every week," but "Defendants did not pay [them] for all their hours worked," including not paying their regular wages for two weeks, and that Defendants' conduct was willful. (*See id.*

7

at 7, 22, 31).  They also allege that they were forced to stop working after they complained.  (*See id.* at 8).  Defendants deny Plaintiffs' claims, assert affirmative defenses, and dispute liability.  (*See* Doc. 15).

In the revised motion, the parties explain:

> The Parties agree that the instant action involves disputed issues.  Although Defendants dispute their liability for the allegedly owed overtime and minimum wage payments to Plaintiffs, as well as for retaliation, they have ultimately agreed to pay Plaintiffs in full settlement of the disputed claims, without admission as to Plaintiffs [sic] underlying claims.

(Doc. 30 at 3).  They also explain that:

> [T]he parties agree that there are genuine disputes as to whether or not Plaintiffs were "independent contractors" rather than "employees" under the FLSA; whether or not Plaintiffs worked the alleged number of hours on a weekly basis; whether or not Plaintiffs were in fact paid properly for all work allegedly performed; whether or not Plaintiffs were in fact at all times paid the required minimum wage under the law; whether or not Plaintiffs were retaliated against or terminated; and whether or not any alleged violations of the FLSA, if any, were willful.  Consequentially, [sic] Plaintiffs could have been barred from any recovery in this matter whatsoever with regards to their claims for unpaid overtime, minimum wages, and retaliation, had Defendants prevailed on their defenses and/or established that Plaintiffs were in fact "independent contractors" not covered under the FLSA.

(*Id.* at 8).

In sum, there is no question that a bona fide dispute exists between the parties. As a result, the proper focus is whether the terms of the proposed settlement are fair and reasonable.

## II. The Proposed Settlement

### A. Monetary Terms

Under the revised settlement, Defendants will pay to each Plaintiff $1,750 "as full relief and compensation of any alleged unpaid overtime wages, minimum wages, loss wages, liquidated damages and any other claims he may have had against Defendants under the FLSA." (Doc. 31 at 6-8). "From the total amount of $1,750.00, $875.00 shall be allocated in satisfaction of [the Plaintiff's] claims for 'wages'; [sic] and $875.00 shall be allocated in satisfaction of [the Plaintiff's] claim for 'liquidated damages.'" (*Id.*).

Although there is a substantial difference between these settlement amounts versus the damages estimates alleged in the Complaint and the damages calculations in Plaintiffs' answers to the Court's interrogatories, the parties explain that:

> The parties agree that upon careful review of Plaintiffs' dates of alleged employment; hours and weeks which Plaintiffs worked; pay records; and all available evidence pertaining to Plaintiffs' employment, this amount represents a fair and reasonable compromise of the disputed claims.

\*   \*   \*

> Accordingly, the amount of this settlement to Plaintiffs is fair and reasonable given that: Plaintiffs will be receiving substantial compensation for their claims under the FLSA; Plaintiffs' claims are highly disputed; the issues of material fact which are at issue; and the fact that Plaintiffs could be barred from recovery in this matter should Defendants prevail on their defenses. Additionally, this settlement is also reasonable given the high costs of defending and litigating this matter further and the time and resources which would have been expended by both parties in taking

> this mater to trial. This settlement was arrived at after considerable negotiation by the parties, and Defendants do not admit any liability in this action.

(*Id.* at 7-9).

The Undersigned finds the parties' explanation as to how they arrived at the settlement amounts to be paid to each Plaintiff to be minimally sufficient. Based on this information, the Undersigned also finds the monetary terms of the settlement to be fair and reasonable. In this regard, the Undersigned places significant weight on: (1) the short time (*i.e.*, about four weeks) Defendants allegedly employed Plaintiffs (*see* Doc. 19 at 1; Doc. 20 at 1; Doc. 21 at 1); (2) the allegation that Plaintiffs' retaliation claim in Count III is based on a limited period of continued employment of less than four additional weeks (*see* Doc. 19 at 2; Doc. 20 at 2; Doc. 21 at 2); (3) the fact that Plaintiffs are represented by counsel who has reviewed and considered the available evidence and advised Plaintiffs of the risks of losing on the merits of the action; and (4) the lack of any indicia of collusion.

### B.   Non-Cash Concessions

The settlement agreement contains only one non-cash concession—*i.e.*, a release by Plaintiffs of all claims against Defendants under the FLSA. (*See* Doc. 30-1 at 2).

Although general releases in FLSA settlement agreements are problematic, *see Serbonich v. Pacifica Fort Myers, LLC*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2440542, at *3 (M.D. Fla. May 29, 2018), *report and recommendation adopted*, 2018

WL 2451845 (M.D. Fla. May 31, 2018), this specific provision is narrowly tailored to release only FLSA claims against Defendants. In light of its limited nature, any concern about broad or general releases does not exist and the settlement may be approved as fair and reasonable. *See Monserrate v. Hartford Fire Ins. Co.*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 8669879, at *4 (M.D. Fla. Sept. 23, 2016), *report and recommendation adopted*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 5746376 (M.D. Fla. Oct. 4, 2016) (approving a release that is limited to claims arising under the FLSA).

Thus, this non-cash concession does not preclude approving the parties' settlement.

### C. Attorney's Fees and Costs

The settlement agreement requires Defendant to pay $5,400.00 in attorney's fees and $600.00 in costs, for a total payment of $6,000.00 to Plaintiffs' counsel. (Doc. 30-1 at 1).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in

11

> reaching [the] same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

The revised motion states that Plaintiffs' counsel expended twenty-eight hours on this matter to date at a rate of $400.00 per hour. (Doc. 31 at 10-11). The parties also state that the amount of fees and costs "were determined separately and apart from Plaintiffs' recovery" and "without compromising the amount paid to Plaintiffs." (*Id.* at 11-12).

Given the procedural posture of the case, the amount of fees and costs appears fair and reasonable. Additionally, based on the parties' representations, the Undersigned finds that the parties agreed upon the attorney's fees and costs without compromising the amount paid to Plaintiffs.

## CONCLUSION

For these reasons, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The parties' Revised Joint Motion for Entry of Order Approving Settlement and Dismissing Case with Prejudice (Doc. 30) be **GRANTED**;

2. The Revised Settlement Agreement and FLSA Release (Doc. 30-1) be approved as a fair and reasonable resolution of a bona fide dispute regarding Plaintiff's FLSA claims; and

3. The Clerk of Court be directed to dismiss this action with prejudice, terminate all pending motions, and close the file.

**RESPECTFULLY RECOMMENDED** in Fort Myers, Florida on January 22, 2022.

Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from the date the party is served a copy of this Report and Recommendation to file written objections to the Report and Recommendation's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. A party wishing to respond to an objection may do so in writing fourteen days from the date the party is served a copy of the objection. **To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.**

13

Copies furnished to:

Counsel of Record
Unrepresented Parties